**William A. MINNICK, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 1282S467.**

Supreme Court of Indiana.

Sept. 7, 1984.

---

Woodrow S. Nasser, Terre Haute, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

Appellant was convicted of Murder by a jury. The jury found appellant had committed the aggravated acts of robbery and rape in conjunction with the murder. The court sentenced appellant to death.

The facts are: Martha Payne was killed during the late afternoon of October 26, 1981. Based on their investigation, the police went to the home of appellant at 4:45 A.M. on the twenty-seventh. The police asked appellant to accompany them to the station to answer questions. Appellant voluntarily complied. Appellant was provided the standard *Miranda* warnings and signed a waiver of those rights. Appellant orally indicated he did not wish the assistance of counsel. He indicated to the police he had been to the victim's home that day, but he did not admit any role in the murder. At approximately 7:00 A.M., on the twenty-seventh, the following discussion was conducted between appellant, his stepfather and mother Mr. and Mrs. Rogers, State Police Officer Hanlon, Greencastle Police Officer Cline and the Putnam County Prosecutor Delbert Brewer.

MR. HANLON: We're going to get a, a warrant, (inaudible)

MR. MINNICK: A warrant for what?

MR. HANLON: Take some hair from, samples of hair, pieces of hair. Girl was, had a lot of hair under her fingernails.

\* \* \* \* \* \*

MR. HANLON: So we're going to get a warrant, to take some samples of your hair. Okay?

MR. MINNICK: Take some, some of mine?

MR. HANLON: Yeah.

MR. MINNICK: Why?

MR. HANLON: Because she had samples of hair on her. And we want to match them. See if we can match them with what's on her.

MR. MINNICK: What's that for?

MR. HANLON: To see if you were, had a hold of her or she had hold of you.

MR. MINNICK: Then I killed her?

MR. HANLON: I don't know that.

SLIGHT INTERRUPTION IN TAPE

MR. CLINE: —just a routine and everything.

MR. ROGERS: Is he under arrest?

MR. MINNICK: Am I under arrest?

MR. HANLON: We're going to hold you for a little while.

MR. MINNICK: Well, I (sic) rather go home.

MRS. ROGERS: Does he need a lawyer?

MR. HANLON: That's up to you.

MR. MINNICK: I'd rather go home. If you're gonna fingerprint me, fingerprint me. I'd rather go home.

MR. BREWER: You're not leaving. Not yet. Also on, on this, what he's talking about on the warrant, you'll be detained because there may have been rape. We're going to take specimens of various parts, as soon as we have the Judge sign it. Which, if the girl was raped and it matches with you, the semen, etcetera (sic), it will also tell us that.

MR. MINNICK: Huh uh. No. —And then can I, am I allowed to go home?

MR. HANLON: Not right now. (inaudible)

MR. MINNICK: Am I under arrest though? Am I under arrest?

MR. BREWER: You're being held for investigation right now.

MR. MINNICK: Am I, am I allowed to go home though?

MR. HANLON: No, no.

MR. MINNICK: Can I get my lawyer then?

MR. CLINE: You're under custodial arrest at this time.

MR. HANLON SPEAKING SIMULTANEOUSLY WITH MR. CLINE.

MR. HANLON: You have a right to (inaudible)

MR. MINNICK: I'm gonna go home then.

MR. HANLON: Wait a minute. (inaudible)

MR. BREWER: We doing the same thing on some other suspects?

MR. CLINE: That's what I'm saying, you have others too.

MR. HANLON: Yeah.

MR. BREWER: But that will tell us scientifically, you know.

\*     \*     \*     \*     \*     \*

MR. ROGERS: Well Jack, do we have to have an attorney or what do you think?

MR. HANLON: Well, that's entirely up to you.

MR. MINNICK: I'd rather have attorney.

MR. BREWER: Huh?

MR. MINNICK: I'd rather have attorney.

MR. BREWER: That won't stop the search warrant.

MR. HANLON: That, that won't stop it.

MR. ROGERS; Well no, but—

MRS. ROGERS: Would it be better then, to just wait what you'ns find and then get an attorney?

MR. BREWER: I can't advise you of that? You have the right to.

MR. HANLON: That's up to you.

This discussion clearly demonstrates two important facts; appellant was in custody and while in custody appellant asserted a request for the assistance of counsel. At that time the police and the prosecutor correctly stopped the interrogation. A search warrant was obtained and the body samples were taken. Appellant was then transported to the Putnam County jail. At 3:00 P.M. on the twenty-seventh, Putnam County Deputy Sheriff Hendrich went to appellant's cell and twice asked appellant if he would like to answer questions. Appellant assented and was taken to be questioned by Hendrich and State Police Officer Smith. The record demonstrates appellant did not request this interrogation, nor did he take any action to initiate the questioning. Appellant gave the police a self-incriminating statement which was introduced into evidence as State's exhibit 63 over the objection of appellant. This was reversible error.

This Court has said:

"When the right of counsel is asserted during questioning, that process must cease, and a confession procured by interrogators thereafter is per se inadmissible in the absence of a new waiver of counsel evidenced by proof that the suspect initiated the resumption of questioning. *Edwards v. Arizona,* (1981) 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378; *Wall v. State,* (1982) Ind., 441 N.E.2d 682, 683." *Clark v. State,* (1984) Ind., 465 N.E.2d 1090 (Givan, C.J. and Pivarnik, J., dissenting).

The United States Supreme Court in *Edwards* dealt with a situation analogous to the case at bar. After initial questioning, the defendant in *Edwards* requested an attorney. The police then ceased the questioning. However, the police later, after providing a new set of warnings, began to interrogate the defendant. He then produced a confession which was introduced as evidence. In *Edwards* the court held:

"[T]hat when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards, supra,* 451 U.S. at 484, 101 S.Ct. at 1884, 68 L.Ed.2d at 386.

This cause is remanded to the trial court for a new trial.

All Justices concur.