Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jun 18 2013, 6:25 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**DAVID LAUTENSCHLAGER**
Carlisle, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DAVID LAUTENSCHLAGER, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1211-PC-653 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Mark D. Stoner, Judge
The Honorable Jeffrey L. Marchal, Master Commissioner
Cause No. 49G06-0304-PC-64421

**June 18, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

David Lautenschlager appeals the post-conviction court's denial of his petition for post-conviction relief. Lautenschlager raises a single issue for our review, namely, whether the post-conviction court erred when it concluded that Lautenschlager had not been denied the effective assistance of trial counsel. We affirm.

## FACTS AND PROCEDURAL HISTORY

In a memorandum decision on Lautenschlager's direct appeal, we described the facts underlying his convictions as follows:

> Preet Singh operates a Sunoco gas station on West Washington Street in Indianapolis, Indiana. On the evening of February 5, 2003, Singh was training a new employee, Freddie Miller, when a man entered the gas station and demanded money. Singh recognized the man as a patron of the gas station and thought he was joking until the man displayed a gun. Miller gave the man all of the money in the cash register, but the man demanded more. Singh and Miller gave him the money from their wallets. The man told Singh and Miller he would kill them if they called the police. He then took cigarettes and a lighter as he left the gas station. Miller called 911.
> On February 17, 2003, Singh was working alone at the gas station when the same man returned and robbed him at gunpoint again. Both Singh and the company which monitored a panic alarm at the station contacted the police.
> The police obtained the security surveillance tapes of both incidents. The investigation led to the production of a six-person photo array that included Lautenschlager's photograph. Marion County Sheriff's Department Detective Michael Hornbrook met with Miller on April 9, 2003, and Miller selected Lautenschlager's photo from the array as the robber. Detective Hornbrook showed the array to Singh the following day, and Singh also selected Lautenschlager's photo. The State then charged Lautenschlager with three counts of robbery as Class B felonies for being armed with a deadly weapon. He was also alleged to be an habitual offender. The jury found Lautenschlager guilty of the three counts of robbery. Lautenschlager waived jury trial of the habitual count, and the court adjudged him an habitual offender. Lautenschlager was ordered to serve an aggregate sentence of forty years. . . .

2

Lautenschlager v. State, No. 49A02-0410-CR-838, slip op. at 2-3 (Ind. Ct. App. July 27, 2005) (footnote omitted), trans. denied ("Lautenschlager I").

On September 11, 2006, Lautenschlager filed his petition for post-conviction relief, which he amended on August 19, 2010. In his amended petition, Lautenschlager asserted that he had been denied the effective assistance of trial counsel for numerous reasons. The post-conviction court held an evidentiary hearing on Lautenschlager's petition and, on May 24, 2012, the court entered findings of fact and conclusions of law denying Lautenschlager's petition. This appeal ensued.

**DISCUSSION AND DECISION**

Overview

Lautenschlager appeals the post-conviction court's denial of his petition for post-conviction relief. Our standard of review is well established:

> [The petitioner] bore the burden of establishing the grounds for post-conviction relief by a preponderance of the evidence. See Ind. Post-Conviction Rule 1(5); Timberlake v. State, 753 N.E.2d 591, 597 (Ind. 2001). Post-conviction procedures do not afford a petitioner with a super-appeal, and not all issues are available. Timberlake, 753 N.E.2d at 597. Rather, subsequent collateral challenges to convictions must be based on grounds enumerated in the post-conviction rules. Id. If an issue was known and available, but not raised on direct appeal, it is waived. Id. If it was raised on appeal, but decided adversely, it is res judicata. Id.
>
> In reviewing the judgment of a post-conviction court, appellate courts consider only the evidence and reasonable inferences supporting the post-conviction court's judgment. Hall v. State, 849 N.E.2d 466, 468 (Ind. 2006). The post-conviction court is the sole judge of the evidence and the credibility of the witnesses. Id. at 468-69. Because he is now appealing from a negative judgment, to the extent his appeal turns on factual issues [the petitioner] must convince this court that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. See Timberlake, 753 N.E.2d at 597. We will disturb

3

the decision only if the evidence is without conflict and leads only to a conclusion contrary to the result of the post-conviction court. Id.

Lindsey v. State, 888 N.E.2d 319, 322 (Ind. Ct. App. 2008), trans. denied.

Lautenschlager's arguments on appeal are premised on his theory that he was denied the effective assistance of trial counsel. A claim of ineffective assistance of counsel must satisfy two components. Strickland v. Washington, 466 U.S. 668 (1984). First, the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the "counsel" guaranteed by the Sixth Amendment. Id. at 687-88. Second, the defendant must show prejudice: a reasonable probability (i.e., a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different. Id. at 694. We afford counsel considerable discretion in choosing strategy and tactics, and "'[i]solated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective.'" State v. Hollin, 970 N.E.2d 147, 151 (Ind. 2012) (quoting Timberlake, 753 N.E.2d at 603) (alteration original to Hollin).

Here, Lautenschlager alleges he was denied the effective assistance of counsel for six reasons, which we consolidate into the following four arguments: (1) his trial counsel failed to seek the removal of a potentially biased juror; (2) his counsel failed to call a video identification expert; (3) his counsel failed to cross-examine witnesses regarding Singh's in-court identification of Lautenschlager; and (4) his counsel failed to establish the lead detective's bias, Lautenschlager's alibi defense, and Lautenschlager's use of prescription medications during trial. We address each of these four arguments in turn.

4

## Juror Removal

Lautenschlager first asserts that his trial counsel was ineffective because he did not seek the removal of a potentially biased juror. In order to succeed on this issue, Lautenschlager must show that his counsel's objection to the juror's presence would have been successful. See, e.g., Danks v. State, 733 N.E.2d 474, 489 (Ind. Ct. App. 2000). During Lautenschlager's trial, the juror in question informed the court that he had been interviewed in another case by the State's lead detective in Lautenschlager's case. In response to ensuing questions from the court, the juror stated that he did not think that there was "anything about [his] contact with [the detective] . . . that would cause [the juror] to lose [his] ability to be fair and impartial." Trial Transcript at 197.

It is well established that "timely disclosure of a juror's casual relationship with a witness or a party, coupled with an assertion that the juror will remain impartial, adequately protect a defendant's right to an impartial jury." McCants v. State, 686 N.E.2d 1281, 1285 (Ind. 1997). Accordingly, had Lautenschlager's counsel objected to the juror's continued service, his objection would not have been successful. Thus, Lautenschlager cannot demonstrate ineffective assistance on this issue.

## Expert Witness

Lautenschlager next asserts that his trial counsel was ineffective because he failed to call a video identification expert to assess the quality of the gas station's security videos. "[W]e do not second-guess strategic decisions requiring reasonable professional judgment even if the strategy or tactic, in hindsight, did not best serve the defendant's interests." State v. Moore, 678 N.E.2d 1258, 1261 (Ind. 1997).

5

At the evidentiary hearing before the post-conviction court, Lautenschlager's trial counsel testified that he did not call an expert to analyze the security videos because, instead, he submitted to the jury an FBI report in which the FBI had concluded the videos were "essentially inconclusive." P-C Transcript at 69. The FBI's report was stipulated to by the State, and Lautenschlager's trial counsel testified that he "made a strategic decision" to use the FBI report "in lieu of live testimony." Id. at 70. We will not second guess counsel's strategic decision, and, as such, Lautenschlager cannot demonstrate that his counsel was ineffective on this issue.

Cross-Examination

Lautenschlager next asserts that his trial counsel failed to cross-examine several witnesses on Singh's eyewitness identification of Lautenschlager. During Singh's testimony at trial, the State asked Singh if he recognized the robber in court. Singh was equivocal, and the State had him dismissed. But, upon leaving the witness stand, Singh recognized Lautenschlager as the robber. The State then recalled Singh as a witness, and Singh testified accordingly.

In his brief in this appeal, Lautenschlager alleges that, between leaving the witness stand and being recalled, Singh "not only spoke with the prosecutor, he also talke[d] with police officers that had been involved in the case." Appellant's Br. at 16. Thus, Lautenschlager, continues, his trial counsel rendered ineffective assistance when he failed to "cross-examine[] the police officers that Mr. Singh spoke with during that time, in order to determine whether or not the question of identification came up during those conversations." Id.

6

Lautenschlager cannot demonstrate reversible error on this issue. At the post-conviction court's evidentiary hearing, Lautenschlager did not call any of the police officers Singh allegedly spoke with at trial to testify before the post-conviction court. Neither does Lautenschlager demonstrate where in the record he elicited any testimony before the post-conviction court on this alleged issue. Lautenschlager's speculation is not sufficient to demonstrate reversible error. Lindsey, 888 N.E.2d at 322.

Other Claims

Finally, Lautenschlager asserts that his trial counsel inadequately established the lead detective's bias, Lautenschlager's alibi defense, and Lautenschlager's use of prescription medications during trial. However, as Lautenschlager candidly acknowledges: "Admittedly, Appellant failed to present evidence in support of these claims." Appellant's Br. at 17. Accordingly, Lautenschlager cannot meet his burden of demonstrating reversible error on any of these purported issues. See Lindsey, 888 N.E.2d at 322.

**Conclusion**

In sum, we affirm the post-conviction court's denial of Lautenschlager's petition for post-conviction relief.

Affirmed.

BAILEY, J., and BARNES, J., concur.

7