## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 06 2015, 11:09 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE

James Watkins
Michigan City, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

## I N T H E
# COURT OF APPEALS OF INDIANA

James Watkins,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

November 6, 2015

Court of Appeals Case No.
49A04-1410-PC-482

Appeal from the Marion Superior Court

The Honorable Kurt M. Eisgruber, Judge

Trial Court Cause No.
49G01-9910-PC-171334

**Najam, Judge.**

# Statement of the Case

James Watkins appeals the post-conviction court's denial of his petition for post-conviction relief. Watkins raises the following two issues for our review:

1. Whether his trial counsel rendered ineffective assistance when he failed to object to the admission of certain evidence.

2. Whether his appellate counsel rendered ineffective assistance when she did not raise on direct appeal an issue with respect to a purported error in the jury instructions.

We affirm.

# Facts and Procedural History

The facts underlying Watkins' convictions and sentence were stated by this court in his direct appeal:

> Jimmy Anderson ("Anderson") and Cara Edwards ("Edwards") lived together at the Wingate Village Apartments. Anderson sold marijuana to friends and neighbors [who] lived in the apartment complex. On the morning of September 15, 1999, Edwards left for work and locked the deadbolt to her apartment with her key, while Anderson remained asleep in bed. At 11:14 that morning Edwards called Anderson and told him that she was going to come home during her lunch hour and smoke a joint. Minutes later, Star Easley ("Easley"), who lived in a neighboring apartment, saw three men leave Anderson and Edwards' apartment building. Phone calls placed to Anderson's apartment between 11:38 a.m. and 11:45 a.m. went unanswered. Edwards and two of her co-workers clocked out of work at 11:45 and drove to her apartment. When they arrived several minutes later

at the apartment Edwards unlocked the dead-bolted door and found Anderson dead on the floor. Anderson's gold chain, his wallet with $250.00, his keys, and two ounces of marijuana were gone.

One of the individuals to whom Anderson had previously sold marijuana was Watkins' brother, neighbor Ezra Watkins ("Ezra"). Ezra lived in an apartment building situated perpendicular to that of Anderson and Edwards. Easley identified Ezra and Watkins as two of the three men that she saw leaving Edwards' apartment that day.

Anderson died as a result of five stab wounds to his neck. The wounds were caused by a knife with a blade length of four to five inches and a width of ¾ of an inch. A knife matching this description was found in Watkins' apartment. The stab wounds to Anderson's neck cut through his carotid artery and into the cartilage of his larynx. No defensive wounds were found on Anderson's body.

Watkins told police that he had never been inside Anderson's apartment[;] however[,] Watkins' right palm print was discovered on the south foyer wall near Anderson's body. The State charged Watkins with Felony Murder, Murder, and Robbery as an A felony. The jury found Watkins guilty as charged. The trial court, noting double jeopardy concerns, entered a judgment of conviction against Watkins for Murder and Robbery as a class B felony. . . .

*Watkins v. State*, 766 N.E.2d 18, 20-21 (Ind. Ct. App. 2002) (footnote omitted), *trans. denied* ("*Watkins I*").

[4]     In his direct appeal, Watkins, by counsel, raised three issues for our review. Specifically, Watkins argued that his convictions were not supported by

sufficient evidence; that his convictions violated the Indiana Double Jeopardy Clause; and that the prosecutor had committed misconduct during the jury trial. We rejected each of these arguments and affirmed Watkins' convictions. *Id.* at 20.

On May 18, 2010, Watkins filed his petition for post-conviction relief. In his petition, Watkins alleged, in relevant part, fundamental error in the admission of evidence and in the instructions to the jury. Watkins further alleged that the same errors resulted in, respectively, the ineffective assistance of trial and appellate counsel. On April 15, 2014, the post-conviction court held an evidentiary hearing on Watkins' petition. Thereafter, the court entered findings of fact and conclusions of law in which it denied the petition. This appeal ensued.

## Discussion and Decision

### *Standard of Review*

Watkins appeals the post-conviction court's denial of his petition for post-conviction relief. Our standard of review in such appeals is clear:

> [The petitioner] bore the burden of establishing the grounds for post[-]conviction relief by a preponderance of the evidence. *See* Ind. Post-Conviction Rule 1(5); *Timberlake v. State*, 753 N.E.2d 591, 597 (Ind. 2001). Post-conviction procedures do not afford a petitioner with a super-appeal, and not all issues are available. *Timberlake*, 753 N.E.2d at 597. Rather, subsequent collateral challenges to convictions must be based on grounds enumerated in the post-conviction rules. *Id.* If an issue was known and

available, but not raised on direct appeal, it is waived. *Id.* If it was raised on appeal, but decided adversely, it is res judicata. *Id.*

In reviewing the judgment of a post-conviction court, appellate courts consider only the evidence and reasonable inferences supporting the post-conviction court's judgment. *Hall v. State*, 849 N.E.2d 466, 468 (Ind. 2006). The post-conviction court is the sole judge of the evidence and the credibility of the witnesses. *Id.* at 468-69. Because he is now appealing from a negative judgment, to the extent his appeal turns on factual issues [the petitioner] must convince this court that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. *See Timberlake*, 753 N.E.2d at 597. We will disturb the decision only if the evidence is without conflict and leads only to a conclusion contrary to the result of the post-conviction court. *Id.*

*Lindsey v. State*, 888 N.E.2d 319, 322 (Ind. Ct. App. 2008), *trans. denied*.

[7] On appeal, Watkins argues that his trial counsel rendered ineffective assistance when he failed to object to the State's admission of a demonstrative knife that matched the murder weapon and was found in a residence frequently visited by Watkins. Watkins also argues that his appellate counsel rendered ineffective assistance when she did not raise an issue with respect to a purportedly erroneous jury instruction on direct appeal. Generally, a claim of ineffective assistance of counsel must satisfy two components. *Strickland v. Washington*, 466 U.S. 668 (1984). First, the criminal defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the "counsel" guaranteed by the Sixth Amendment. *Id.* at 687-88. Second, the

criminal defendant must show prejudice: a reasonable probability (i.e., a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 694. We address each of Watkins' issues on appeal in turn.[1]

### Issue One: Trial Counsel

Watkins asserts that his trial counsel rendered ineffective assistance when he failed to object to the State's admission of Exhibit 51. This exhibit, a knife that had been retrieved from a residence frequently visited by Watkins and that matched the dimensions of the murder weapon, was admitted not as "the murder weapon" but, rather, only as demonstrative evidence. As such, at the evidentiary hearing on Watkins' post-conviction petition, his trial counsel testified as follows:

> Q      . . . [D]o you think you felt at the time that [the knife] was admissible?
>
> A      I may have, but it's been too long. I may have thought[,] if I object, it will be overruled. I may have thought it doesn't hurt . . . . *That was my feeling going in, that this knife was a red*

---

[1] Throughout his brief on appeal, Watkins makes references to allegedly "fundamental" errors and various rights under the Indiana Constitution. *E.g.*, Appellant's Br. at 4. Freestanding claims of fundamental error are not available for post-conviction review. *Lindsey*, 888 N.E.2d at 325. As such, we do not consider those claims. And Watkins' purported arguments under the Indiana Constitution are not supported by cogent reasoning or citation to authority. *See* Ind. Appellate Rule 46(A)(8)(a). Thus, we also do not consider those assertions.

*herring. That wasn't what was going to convict James. The bloody print and the eyewitness was going to convict James.*

\* \* \*

 . . . To me it had no impact. It wasn't germane. It wasn't persuasive in my mind to anything. Here's a knife that we found. No serology, no blood, no DNA, no fingerprints . . . so I'm thinking so what?

\* \* \*

Q      Did you consider objecting to the implication without any foundation that that could have been the murder weapon?

A      I don't recall if I thought about objecting, but I adhere to the rule that simply because you can object doesn't mean that you should. *We're in the middle of final, and when you object in final, sometimes you run the risk of highlighting to the jury what you don't want them to consider.*

P-C Tr. at 14-17 (emphases added).

[9]      Thus, the decision of Watkins' trial counsel to not object to the admission of State's Exhibit 51 was a matter of trial strategy. "[W]e do not second-guess strategic decisions requiring reasonable professional judgment even if the strategy or tactic, in hindsight, did not best serve the defendant's interests." *State v. Moore*, 678 N.E.2d 1258, 1261 (Ind. 1997). But that is what Watkins invites us to do now; he asks that we second-guess his trial counsel's strategic decision to not draw emphasis to evidence counsel had concluded to be a red

herring. We will not second-guess this decision. As such, Watkins cannot show that the post-conviction court's conclusion that he did not receive ineffective assistance of trial counsel is clearly erroneous.

### Issue Two: Appellate Counsel

[10] Watkins next asserts that he received ineffective assistance from his appellate counsel when she failed to raise on direct appeal an issue with respect to a purportedly erroneous jury instruction. "Ineffectiveness is very rarely found in these cases." *Bieghler v. State*, 690 N.E.2d 188, 193 (Ind. 1997) (quotations and alteration omitted).

> One reason for this is that the decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel. Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most a few key issues. . . . Accordingly, when assessing these types of ineffectiveness claims, reviewing courts should be particularly deferential to counsel's strategic decision to exclude certain issues in favor of others, unless such a decision was unquestionably unreasonable.

*Id.* at 193-94 (quotations and citations omitted).

[11] Here, Watkins argues that the jury instruction on accomplice liability was erroneous because it failed to inform the jury that, to be liable as an accomplice, the State had to prove that Watkins "engaged in voluntary conduct in concert with his accomplice." Appellant's Br. at 14. As such, Watkins continues, his appellate counsel rendered ineffective assistance when she failed to raise the

erroneous jury instruction on direct appeal. Instead, Watkins' appellate counsel challenged the sufficiency of the evidence, whether Watkins' convictions violated double jeopardy, and whether the prosecutor committed misconduct.

[12] The jury-instruction issue was not a clearly stronger issue than the issues raised by Watkins' counsel on direct appeal. Watkins' trial counsel did not object to the jury instructions on the grounds Watkins now asserts them to have been erroneous. Trial Tr. at 830. As such, had Watkins' appellate counsel raised this issue on direct appeal, the likely result would have been for this court to simply note that the issue had not been preserved for review. Thus, Watkins cannot demonstrate that the post-conviction court's conclusion that he did not receive ineffective assistance from his appellate counsel is clearly erroneous, and we affirm the post-conviction court's judgment.

[13] Affirmed.

Kirsch, J., and Barnes, J., concur.